IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROGER EDWARD JEROME BIEROS, | : | NO. 2:07-cv-238-JCJ |
| Petitioner | : | |
| | : | |
| VS. | : | |
| | : | |
| WARDEN, STATE FACILITY | : | |
| HUNTINGDON - GRACE, J.L., | : | |
| AND | : | |
| THE DISTRICT ATTORNEY OF | : | |
| THE COUNTY OF PHILADELPHIA, | : | |
| AND | : | |
| THE ATTORNEY GENERAL OF | : | |
| THE STATE OF PENNSYLVANIA, | : | |
| Respondents | : | |

<u>REPORT AND RECOMMENDATION</u>

CHARLES B. SMITH
UNITED STATES MAGISTRATE JUDGE

Currently pending before this Court is a Petition for Writ of Habeas Corpus filed, pursuant to 28 U.S.C. § 2254, by a prisoner incarcerated in the State Correctional Institution at Huntingdon, Pennsylvania. For the reasons which follow, the Court recommends that the petition be dismissed without prejudice for failure to exhaust state court remedies.

I.   PROCEDURAL HISTORY

Following a jury trial before the Honorable James A. Lineberger of the Philadelphia Court of Common Pleas, petitioner was convicted, on January 29, 2002, of attempted murder, aggravated assault and possession of an instrument of crime. Judge Lineberger sentenced him to an aggregate term of thirteen to twenty-five years imprisonment. In lieu of filing a timely appeal from these convictions, petitioner sought federal habeas relief on June 17, 2002. Less than one month later, on July 3, 2002, petitioner filed a second habeas petition. This Court dismissed his first petition without prejudice for

failure to exhaust state remedies on June 21, 2003. Subsequently, on November 15, 2002, the second petition was dismissed on the same grounds.

Thereafter, on February 6, 2003, petitioner submitted a *pro se* petition under the Pennsylvania Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. § 9541, *et seq.*, seeking reinstatement of his direct appeal rights *nunc pro tunc*. The PCRA court granted petitioner the requested relief on October 6, 2003. Following the appointment of counsel, petitioner filed a notice of appeal to the Pennsylvania Superior Court, dated October 26, 2004. That appeal remains pending to date

On October 4, 2004, just prior to the PCRA court's reinstatement of petitioner's direct appeal rights, petitioner filed a third Petition for Writ of Habeas Corpus, alleging that the state courts were delinquent in acting on his PCRA petition. This Court again dismissed the petition without prejudice, on April 28, 2005, for failure to exhaust state court remedies, finding no inordinate delay. Subsequently, the Third Circuit denied petitioner's request for a certificate of appealability.

Petitioner filed the instant petition for writ of habeas corpus on January 18, 2007, raising several challenges to his conviction. He again argues inordinate delay by the state courts.

II.     FAILURE TO EXHAUST STATE COURT REMEDIES

As with petitioner's previous petitions, respondents' sole defense to the habeas petition argues that the claims are unexhausted and, therefore, must be dismissed without prejudice. In light of both the record and our precedential jurisprudence, the Court agrees.

Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court. O'Sullivan v. Boerckel, 526 U.S. 838, 842, 119 S. Ct. 1728, 1731 (1999). A petitioner is not deemed to have exhausted the remedies available to him if he has a right, under state law, to raise, by any available procedure, the question presented. 28 U.S.C. § 2254(c); Castille v. Peoples, 489 U.S. 346, 350, 109 S. Ct. 1056, 1059 (1989). A habeas petitioner retains the burden of

2

showing that all of the claims alleged have been "fairly presented" to the state courts, which demands, in turn, that the claims brought in federal court be the "substantial equivalent" of those presented to the state courts. Santana v. Fenton, 685 F.2d 71, 73-74 (3d Cir. 1982). In the case of an unexhausted petition, the federal courts should dismiss without prejudice, otherwise, they risk depriving state courts of the "opportunity to correct their own errors, if any." Toulson v. Beyer, 987 F.2d 984, 989 (3d Cir. 1993).

Notably, exhaustion is not a jurisdictional requirement, but rather a rule of comity, which a federal court, in certain circumstances, may excuse. Evans v. Court of Common Pleas, 959 F.2d 1227, 1231 (3d Cir. 1992). As such, "[i]f it appears that the prisoner's rights have become an 'empty shell' or that the state process is a 'procedural morass' offering no hope of relief," the federal court may consider petitioner's claims on the merits, notwithstanding non-exhaustion. Hankins v. Fulcomer, 941 F.2d 246, 250 (3d Cir. 1991). Interpreting this principle, the Third Circuit has held that "exhaustion is not required if there is inordinate delay in state procedures, . . . if state officials have obstructed the petitioner's attempts to obtain state remedies," or because "the state court would refuse on procedural grounds to hear the merits of the claims." Lines v. Larkins, 208 F.3d 153, 163 (3d Cir. 2000) (internal citations omitted).

As noted above, petitioner, in this case, alleges inordinate delay. Although no bright-line rule exists, it remains well-established that "when a state court fails to act in spite of 'ample opportunity' to decide a prisoner's claims, considerations of comity do not necessarily require dismissal for lack of exhaustion." Hankins, 941 F.2d at 250. Inordinate delay has generally been found when the state courts have taken little to no action on a petition or appeal over multiple years. See, e.g., Story v. Kindt, 26 F.3d 402, 406 (3d Cir. 1994) (nine-year delay sufficient to excuse exhaustion); Burkett v. Cunningham, 826 F.2d 1208, 1218-1219 (3d Cir.1987) (delay of three and a half years between conviction and

3

sentencing and a further delay of almost two years caused by trial court hindrance of appeal constitutes inordinate delay); Wojtczak v. Fulcomer, 800 F.2d 353, 354-355 (3d Cir.1986) (delay of thirty-three months attributable to disinterest on the part of the court and court-appointed counsel sufficient to excuse exhaustion). Where, however, the state courts have been responsive to a petition and state court procedures are moving at a reasonable pace, courts have been significantly less willing to find inordinate delay. See, e.g., Cristin v. Brennan, 281 F.3d 404, 411 (3d Cir. 2002) (refusing to find inordinate delay for twenty-seven month delay between filing of PCRA petition and filing of habeas petition where oral argument was held, evidentiary hearing scheduled and then waived and petition finally denied); Kerwin v. Werner, Civ. A. NO. 02-6760, 2003 WL 22016808, *3 (E.D. Pa. Aug. 25, 2003) (declining to find inordinate delay where in the four years since petitioner's conviction, state courts appointed new counsel on multiple occasions in response to his complaints, reinstated petitioner's appellate rights *nunc pro tunc,* decided petitioner's direct appeal, and granted Petitioner permission to file for a writ of *certiorari* with the United States Supreme Court *nunc pro tunc)*.

  In the case at bar, petitioner again asserts that there has been a continuing delay over the course of five years, which has essentially rendered his state court remedies meaningless. As reflected by the record, however, this is far from a case where the state courts have stonewalled petitioner's efforts or turned a blind eye to his motions. Indeed, much of the delay in this case is a result of petitioner's own actions and refusal to follow the prescribed procedures. From the date of his conviction in January of 2002 until the filing of his first PCRA petition in February of 2003, petitioner pursued no state court relief, but rather opted to file two improper federal habeas petitions. Upon seeking PCRA relief, the state court, acting within a year and a half's time, granted petitioner the opportunity to appeal his conviction *nunc pro tunc*. Yet, petitioner did not file his notice of appeal until October 26, 2004. In the two and a half years since that filing, the following proceedings occurred:

June 3, 2005 - petitioner files a motion to remove counsel and appoint new counsel

July 1, 2005 - The Superior Court denies the motion, but directs counsel to "provide appellant copies of the trial court opinion and appellant's brief when they become available."

October 6, 2005 - Petitioner's counsel files a motion to withdraw

October 28, 2005 - The Superior Court remands to the PCRA court to conduct a colloquy "as to whether appellant's request to proceed pro se is knowing, intelligent and voluntary."

March 13, 2006 - Petitioner files an "Application for Writ of Mandamus."

April 3, 2006 - The Superior Court transfers the "mandamus" action, in which petitioner seeks the return of legal documents, to the Commonwealth Court; directs the PCRA court to conduct the colloquy ordered on October 28, 2005; and vacates the briefing schedule pending the PCRA court's decision.

May 4, 2006 - The PCRA court holds a hearing, after which it permits petitioner to proceed pro se and allows counsel to withdraw.

May 15, 2006 - The Superior Court establishes a briefing schedule

June 28, 2006 - Petitioner files an Application for Stay.

July 28, 2006 - The Superior Court grants the Application and remands the record to the PCRA court with orders to provide petitioner with "any relevant and necessary record documents." The briefing schedule is vacated pending return of the record.

September 5, 2006 - The PCRA court sends petitioner a letter stating that it is sending him the relevant documents.

October 26, 2006 - Petitioner files a "Motion to Have Lower Court Submission Made Part of the Record and Motion for Transcripts."

November 27, 2006 - The Superior Court denies the motion without prejudice to renew his requests in his appellate brief.

In light of this history, the Court is constrained to conclude that the state courts have proceeded in a reasonably prompt fashion, handling petitioner's multiple motions and requests for relief, establishing briefing schedules and providing relevant documents. Nothing in the procedural history suggests that petitioner will not receive a timely decision from the Superior Court upon completion of

briefing by both parties. Thus, petitioner has far from established inordinate delay necessary to excuse the exhaustion requirement.[2]

To the extent petitioner attempts to translate his inordinate delay claim into one alleging a violation of due process, he is likewise mistaken. Although the Supreme Court has not expressly recognized the constitutional right to a speedy appeal, the Third Circuit has noted that if a state has given a defendant the right to appeal, the Due Process Clause guarantees the right to a speedy appeal. Simmons v. Beyer, 44 F.3d 1160, 1169 (3d Cir. 1995) (citing Burkett v. Cunningham, 826 F.2d 1208 (3d Cir. 1987)).[3] As such a claim is analogous to a speedy trial claim, the Third Circuit has applied the four factors enumerated by the United States Supreme Court for such claims in Barker v. Wingo, 407 U.S. 514, 92 S. Ct. 2182 (1972). Simmons, 44 F.3d at 1169. The Barker factors include consideration of: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant. Barker, 407 U.S. at 530. These four elements "must be considered together in a balancing process with such other circumstances as may be relevant." Id. at 533. However, "[u]ntil there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." Id. at 530.

In this case, a total of five years have passed since petitioner's original conviction. During the first of those years, petitioner sought no state relief. Over the next year and a half, petitioner sought and was granted the right to have his appellate rights reinstated *nunc pro tunc*. Petitioner then used the following year to obtain counsel and file his notice of appeal. What remains, then, is a period of two years and four months during which his direct appeal has been pending. As noted above, however, that

---

[2] Petitioner alleges, in his brief, that his efforts to pursue his direct appeal have been thwarted by the confiscation of his boxes of legal papers by prison authorities. He failed, however, to seek proper redress of this issue in the state courts until his March 13, 2006 Writ of Mandamus. In response, the Superior Court has ordered that he be provided with the crucial documentation and the PCRA court has, according to the docket, provided such information.

[3] The Pennsylvania Constitution guarantees the right to a direct appeal. Pa. Const. art. V, § 9.

time has been spent by the state court addressing petitioner's requests to proceed *pro se* and requests for documents. In fact, little more than a few months has lapsed between docket entries. Absent at least some presumptively prejudicial delay, the Court finds no merit to petitioner's speedy appeal claim.

As we have previously remarked in prior Reports and Recommendations, the Court's refusal to hear petitioner's claims at this juncture does not bar his return. We stress, however, that petitioner must patiently pursue his state court remedies and allow the state courts a reasonable time to act. Undoubtedly, the normal delays of the justice system are frustrating, but, like all other criminal defendants, petitioner must navigate his way through these processes. His repeated filing of habeas petitions will do nothing to expedite the consideration of his claims. Should petitioner not obtain the requested relief from the state courts, he may file, in a timely manner, a new petition for writ of habeas corpus. Moreover, if petitioner finds himself truly subject to an inordinate delay in the state processes, he may again return. We again emphasize, however, that unless and until the state courts clearly stonewall his efforts to obtain relief, principles of comity mandate that this Court decline the current invitation to consider his habeas petition.[4]

Therefore, I make the following:

---

[4] Although this Court has the discretion to stay this petition rather than dismiss it, we find that a stay is inappropriate in these circumstances. The United States Supreme Court, in Rhines v. Weber, 544 U.S. 269, 125 S. Ct. 1528 (2005), recognized that stay and abeyance should be used only in limited circumstances at the discretion of the district court. Id. 544 U.S. 1535. As noted by both the U.S. Supreme Court and the Third Circuit, the primary purpose for holding a petition in stay and abeyance is to allow a petitioner to exhaust state remedies without facing a potential time-bar when he or she returns to federal court. Id., 544 U.S. at 275-276; Crews v. Horn, 360 F.3d 146, 151 (3d Cir. 2004). In this case, petitioner does not face a time bar since the federal statute of limitations has not started running and will not even begin until the conclusion of his direct appeal, thus leaving him one full year in which to file a proper habeas petition. As the purposes of a stay would not be served in this case, we decline to do so. See Moore v. Leone, Civ. A. No. 05-4005, 2006 WL 2627927, *4 (D.N.J. Sept. 13, 2006) (declining to use stay and abeyance where petitioner had sufficient time to exhaust state remedies and return to federal court); Downs v. Ricci, Civ. A. No. 06-1393, 2006 WL 3231425, *2 (D.N.J. Nov. 8 2006) (same).

## RECOMMENDATION

AND NOW, this *27th* day of *February*, 2007, IT IS RESPECTFULLY RECOMMENDED that the Petition for Writ of Habeas Corpus be DISMISSED WITHOUT PREJUDICE for failure to exhaust state court remedies. There is no probable cause to issue a certificate of appealability.

BY THE COURT:

/s/ Charles B. Smith
      CHARLES B. SMITH
CHIEF UNITED STATES MAGISTRATE JUDGE